**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**CIVIL ACTION NO. 5:21-CV-130-TBR**

| | |
|---|---|
| **H.P., BY AND THROUGH HIS MOTHER, CONSERVATOR, AND NEXT FRIEND, HEATHER PACE, ET AL.,** | **PLAINTIFFS** |
| v. | |
| **STATE AUTOMOBILE INSURANCE COMPANY** | **DEFENDANT** |

**MEMORANDUM OPINION & ORDER**

This matter is before the Court on the Motion for Summary Judgment filed by Defendant State Automobile Insurance Company ("State Auto"), [DN 18]. Plaintiffs have filed a response, [DN 21], and State Auto has replied, [DN 22]. Also before the Court is a Motion for Summary Judgment filed by Plaintiffs, [DN 20]. State Auto filed a response to this motion, [DN 22], and Plaintiffs have replied, [DN 23]. Both motions are therefore fully briefed and ripe for review. For the reasons set forth below, the Court will grant State Auto's Motion for Summary Judgment, [DN 18], and deny Plaintiffs' Motion for Summary Judgment, [DN 20].

**I.   BACKGROUND**

    **A.  The Accident**

On July 19, 2019, Plaintiff Corey Pace was operating a 2015 Polaris Ranger all-terrain vehicle ("ATV")[1] owned by Pace Family Farm LLC, which is in turn owned by Corey Pace and

---

[1] The Polaris Ranger is also referred to as a utility terrain vehicle ("UTV"). *See, e.g.*, [DN 18-3]. For purposes of this opinion, that distinction is not important.

1

his father, Robert Pace. [DN 18-1, p. 5; DN 20, p. 2]. Corey drove the ATV north along the east side of a roadway in Ballard County, Kentucky, spraying a ditch and fence row with weed killer. *Id.* at 3. His minor son, H.P., rode along as a passenger on the Polaris Ranger. *Id.* Meanwhile, Robert A. Walton was driving a Lincoln MKX north along the same roadway. *Id.* at 3–4. Walton ultimately collided with the rear of the Polaris Ranger, ejecting both Corey Pace and his son from the ATV. *Id.* at 3. Both Corey and H.P. were taken by helicopter to a nearby hospital. *Id.*

### B. The Insurance Policies

#### 1. The Business Auto Policy

State Auto issued a Business Auto Policy (Number BAF-6502096) to Robert F. Pace, the father of Plaintiff Corey Pace,[2] for a one-year term beginning December 17, 2018 and ending December 17, 2019. [DN 18-4 (certified copy)]. The "Named Insured" on the policy is Robert F. Pace. *Id.* at 30. Neither Corey Pace nor H.P. are listed as Named Insureds.

The policy incudes a three-page section explaining its UIM coverage. *Id.* at 42–54. That section begins with the heading "**KENTUCKY UNDERINSURED MOTORISTS COVERAGE**," in bold capital letters. *Id.* It goes on to explain the type of UIM coverage offered by State Auto:

> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's lability for these damages must result from the ownership, maintenance or use of an "underinsured motor vehicle".

*Id.* at 52. It also explains "Who Is An Insured":

> If the Named Insured is designated in the Declarations as:
>
>   1. An individual, then the following are "insureds":
>       a. The Named Insured and any "family member"

---

[2] Plaintiffs represent that Robert Pace is Corey Pace's father and H.P.'s grandfather. *See, e.g.*, [DN 21, p. 1]. This fact, even if assumed to be true, does not alter the Court's analysis.

> b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
> c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
>
> 2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
> > a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
> > b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

*Id.* Many of the terms in the UIM provisions are also defined in that section. For example, a "family member" is a "person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child." *Id.* at 54.

This UIM coverage is mentioned elsewhere in the policy, as well. In Item Two of the Declarations, which includes a chart outlining the types of coverage and the covered autos for each type, the policy states that it will provide up to $1,000,000 per accident in UIM benefits. *Id.* at 32. However, the coverage applied only to "those 'autos' shown as covered 'autos'" on the chart. *Id.* Under "Covered Autos" for the UIM coverage, the chart provides a code, 07. *Id.* That code is explained in "Section I—Covered Autos," which explains that the code refers to "Specifically Described 'Autos,'" meaning "[o]nly those 'autos' described in Item Three of the Declarations for which a premium charge is shown." *Id.* at 38. Item Three, in turn, lists those scheduled autos covered by the policy. *Id.* at 33–35. Item Three does not list the Polaris Ranger that was involved in the July 19, 2019 accident.

However, the policy does contemplate coverage of vehicles acquired after the creation of the policy. Section I states,

3

> [I]f symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered 'auto' for that coverage only if: (a) We already cover all 'autos' that you own for that coverage or it replaces an "auto" you previously owned that had coverage; and (b) You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

*Id.* at 38–39. In this case, there is no evidence, nor any allegation, that Plaintiffs made any attempts to add the Polaris Ranger to the Business Auto Policy.

### 2. The Preferred Farm and Ranch Policy

Plaintiffs also reference a Preferred Farm and Ranch Policy (No. FO-4605066). [DN 20]. They include an uncertified excerpt of that policy with their Motion for Summary Judgment. [DN 20-2]. Like the Business Auto Policy, this policy was effective From December 17, 2018 through December 17, 2019. [DN 20-2, p. 3]. The Named Insured is Robert F. Pace. *Id.*

The Preferred Farm and Ranch Policy provides coverage for dwellings, private structures, personal property, and barns, farm buildings, and structures, among other types of property. [DN 20-2]. It also provides the following liability coverage: Farm Personal Liability, Fire Legal Liability, Livestock Collision, and other forms of liability coverage. *Id.* In June 2019, Robert Pace added coverage, including Recreational Motor Vehicle Liability coverage for the 2015 Polaris Ranger. *Id.* at 7. He also added Corey Pace as an "Additional Insured." Notably, however, Plaintiffs have not identified any portion of the policy referencing underinsured (or uninsured) motorist coverage.

### C. The Present Lawsuit

On February 3, 2020, counsel for Plaintiffs notified State Auto that Walton's insurer had offered its policy limits to settle their personal injury claims. [DN 18-2]. Plaintiffs then sought underinsured motorist ("UIM") benefits from their State Auto policy. *Id.* State Auto denied their

4

claim for UIM benefits, finding that Plaintiffs were not within the class of individuals covered by the policy. [DN 18-3].

Plaintiffs then initiated this suit against State Auto in Ballard Circuit Court, seeking a declaration that State Auto owes the limits of its UIM coverage to Plaintiffs. [DN 1-2]. State Auto removed the matter to this Court, [DN 1], and filed its answer and a counterclaim, [DN 7]. In its counterclaim, State Auto seeks a declaration that it is under no duty to pay any insurance proceeds to Plaintiffs for damages arising from the July 19, 2019 accident. *Id.* at 12.

Neither party disputes that the sole issue before the Court is whether Plaintiffs are entitled to UIM benefits under their State Auto coverage. The Court held a telephonic status conference on October 14, 2021 and ordered the parties to brief this issue. [DN 16]. In response, State Auto filed its Motion for Summary Judgment, [DN 18], attaching, among other things, a copy of the Business Auto Policy. [DN 18-4]. State Auto argues that the plain language of the statute is clear and unambiguous. *Id.* Based on the policy's plain language, State Auto argues, Corey Pace and his son, H.P., do not qualify for UIM benefits because they do not reside in the same household as the Named Insured, nor were they occupying a covered automobile at the time of the accident. [DN 18]. Plaintiffs also filed a Motion for Summary Judgment, [DN 20], to which they attached a copy of the Preferred Farm and Ranch Policy. [DN 20-2]. Plaintiffs argue that summary judgment is premature, as discovery has not yet begun, and regardless, Plaintiffs reasonably expected to receive UIM coverage under the Preferred Farm and Ranch Policy. [DN 20]. Both motions have been fully briefed, [DN 21; DN22; DN 23], and are ripe for review.

## II.     LEGAL STANDARD

To grant a motion for summary judgment, the Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

In reviewing a motion for summary judgment, the Court must review the evidence in the light most favorable to the non-moving party; however, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Ultimately, if the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, then there is no genuine issue of material fact and summary judgment is appropriate. *Matsushita Elec.*, 475 U.S. at 587 (citation omitted).

### III. ANALYSIS

#### A. Basic Principles of Contract Interpretation

6

Interpretation of an insurance policy is a question of law. *K.M.R. v. Foremost Ins. Group*, 171 S.W.3d 751, 753 (Ky. App. 2005) (citation omitted). Under Kentucky law, two cardinal principles guide the Court's review: "(1) the contract should be liberally construed and all doubts resolved in favor of the insureds; and (2) exceptions and exclusions should be strictly construed to make insurance effective." *Id.* (quoting *Kentucky Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992)). Thus, if there are any ambiguities in the insurance policy, they must be resolved in favor of the insured. *Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 630 (Ky. 2005) (citation omitted). From this basic principle stems the "reasonable expectation doctrine," which resolves ambiguities "in favor of the insured's reasonable expectation." *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003) (citation omitted). This doctrine "is based on the premise that policy language will be construed as laymen would understand it." *Id.* (quoting *Ohio Cas. Ins. Co. v. Stansfield*, 581 S.W.2D 555, 560 (Ky. 1979)) (internal quotation marks omitted). Thus, when an ambiguity exists, the ambiguous terms should be interpreted in favor of the insured's reasonable expectations. *Id.*

Importantly, the reasonable expectations doctrine only applies to ambiguous terms. *Id.* (citation omitted). An ambiguity exists when a policy provision is subject to two or more reasonable expectations. *Id.*; *see also In re Settlement Facility Dow Corning Trust*, 628 F.3d 769, 772 (6th Cir. 2010) ("A basic principle of contract interpretation is that '[a] term is deemed ambiguous when it is capable of more than one reasonable interpretation.'" (quoting *In re Dow Corning Corp.*, 456 F.3d 668, 676 (6th Cir. 2008))). "However, '[t]he mere fact that [a party] attempt[s] to muddy the water and create some question of interpretation does not necessarily create an ambiguity.'" *True*, 99 S.W.3d at 443 (quoting *Sutton v. Shelter Mut. Ins. Co.*, 971 S.W.2d 807, 808 (1997)). And while contracts should be liberally construed, "[a] liberal

7

interpretation is not synonymous with a strained one." *K.M.R.*, 171 S.W.3d at 753. "Only actual ambiguities, not fanciful ones, will trigger application of the [reasonable expectation] doctrine." *True*, 99 S.W.3d at 443 (citation omitted).

> As the Supreme Court of Kentucky has explained,
>
> "Terms of insurance contracts have no technical meaning in law and are to be interpreted according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured." But this "rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with ... the plain meaning and/or language in the contract." When the terms of an insurance contract are unambiguous and not unreasonable, they will be enforced.

*McClendon*, 157 S.W.3d at 630 (citations omitted). Stated simply, when no ambiguity exists, the Court "must construe clear and unambiguous terms in a contract according to their 'plain and ordinary meaning.'" *K.M.R.*, 171 S.W.3d at 753 (quoting *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131–32 (Ky.1999)). Ultimately, insurance policies "should be interpreted according to the parties' mutual understanding at the time they entered into the contract and '[s]uch mutual intention is to be deduced, if possible, from the language of the contract alone.'" *Id.* (quoting *Nolan*, 10 S.W.3d at 131–32).

### B. Kentucky's UIM Coverage Law

In 1974, the Kentucky legislature enacted the Motor Vehicle Reparations Act ("MVRA") "to establish a comprehensive motor-vehicle insurance system designed to address the growing number of accidents on Kentucky roads each year." *Philadelphia Indemnity Ins. Co., Inc. v. Tryon*, 502 S.W.3d 585, 588 (Ky. 2016) (citing KRS § 304.39-010). Among other things, the MVRA provides "direction to insurers on the role of underinsured motorist coverage." *Id.* First, the Act defines an underinsured motorist as "a party with motor vehicle liability insurance

coverage in an amount less than a judgment recovered against that party for damages on account of injury due to a motor vehicle accident." KRS § 304.39-320(1). The Act also requires insurers to make UIM coverage "available upon request to its insureds," but "subject to the terms and conditions of such coverage not inconsistent with this section." KRS § 304.39-320(2). Thus, as the Supreme Court of Kentucky has explained,

> the MVRA takes two strong positions on UIM coverage. First, UIM coverage is supplemental—insurers are not forced to offer it unless the insured requests this additional coverage. And second, insurers are free to contract with insureds on the form and scope of coverage, so long as the terms remain consistent with the remaining provisions of the MVRA.

*Tryon*, 502 S.W.3d at 588.

The Supreme Court of Kentucky has also considered whether UIM exclusion provisions—i.e, provisions limiting the scope of UIM coverage—are permissible. In *Philadelphia Indemnity Insurance Co., Inc. v. Tryon*, the court said "with certainty" that "reasonable UIM exclusion provisions" are not barred by the MVRA or Kentucky public policy. *Id.* at 592. In so ruling, the court noted that "the MVRA does not outweigh the basic and fundamental liberty to contract and create personal insurance policies." *Id.* at 591. Instead, when reviewing the application of UIM exclusion provisions in an insurance policy, "rules of contract ultimately guide [the] analysis." *Id.* In turn, the application of contract principles to an insurance policy "ultimately becomes an inquiry of reasonable expectations." *Id.* at 591. Referring to the reasonable expectations doctrine, the court explained that "reasonable expectations with respect to insurance coverage essentially means that 'the insured is entitled to all the coverage he may reasonably expect to be provided under the policy." *Id.* (quoting *Simon v. Continental Ins. Co.*, 724 S.W.2d 210, 212 (Ky. 1986)) (internal quotation marks omitted). However, "an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude

9

coverage will defeat that expectation." *Id.* (quoting *Simon*, 724 S.W.2d at 212) (internal quotation marks omitted).

In *Tryon*, the court applied these principles when considering the enforceability of the UIM provisions in two separate insurance policies. The first policy by Encompass Indemnity Company (the "Encompass Policy") included an owned-but-not-scheduled exclusion that excluded coverage for vehicles owned by the insured but not scheduled for coverage under the policy. *Id.* at 592–93. It included a separate heading for its UIM provisions, and it expressly stated in the definition of "covered person" that UIM coverage would not be extended to vehicles owned by Tryon but not insured for coverage under the policy. *Id.* at 592. It did allow additional vehicles to be added to the policy within thirty days of acquiring the vehicle, or with the insurer's agreement if more than thirty days had passed. *Id.* at 592–93. Further, the policy expressly stated that it did not provide UIM coverage for any covered person "operating or occupying a motor vehicle . . . if the motor vehicle is not specifically identified in this policy under which a claim is made." *Id.* at 593. Based on this clear and unambiguous language, the court found that there was "no way" it could hold that "Tryon had any reasonable expectation of UIM coverage." *Id.*

The language in the second policy, however, was less clear. That policy, issued by Philadelphia Indemnity Insurance Company, Inc. (the "Philadelphia Policy"), did not include a separate section for UIM coverage. *Id.* Instead, the insurer pointed to a similar exclusion provision in the "Uninsured Motorists Coverage" section of the policy. *Id.* Like the Encompass Policy, the Philadelphia Policy's exclusion provision also excluded coverage for injuries sustained by a party operating a vehicle not insured for coverage under the policy. *Id.* The court noted that the exclusion provision was clear and unambiguous—but it applied only to *uninsured* motorist coverage and made no mention of *underinsured* motorist coverage. Assuming that

Tryon had contracted for UIM coverage at all (something the parties in that case apparently conceded), "there [was] nothing in the policy reasonably to place him on notice that his UIM benefits are subject to certain situational exclusions." *Id.* Thus, the court held, the Philadelphia policy did not include a UIM exclusion provision that could be applied against the insurer. *Id.* at 593–94.

Accordingly, in *Tryon*, the Supreme Court of Kentucky made clear that "owned-but-not-scheduled provisions for UIM coverage are enforceable under Kentucky law so long as they expressly and plainly apprise insureds of the exclusion." *Id.* at 594. However, unclear and ambiguous exclusion provisions will not defeat the insured's reasonable expectation of UIM coverage. *Id.* at 593. With these principles of UIM coverage and contract interpretation in mind, the Court considers the parties' arguments in this case.

### C. Plaintiffs' UIM Coverage Under the State Auto Policies

As noted above, State Auto argues that Plaintiffs are not entitled to UIM benefits under the Business Auto Policy, while Plaintiffs rely on the Preferred Farm and Ranch Policy to argue that they are entitled to such benefits. Thus, the Court must first determine which policy is applicable in this case.

In their Motion for Summary Judgment, Plaintiffs refer to "comprehensive commercial insurance coverage," citing only to the Business Auto Policy. [DN 20, p. 1 (citing DN 18-4)]. Referring to this "coverage," Plaintiffs claim that their "State Auto coverage integrated various commercial automobile, farm and umbrella coverage to fully cover [Pace Family Farms, LLC], and its operations, employees, and owners, including Robert and Corey." *Id.* at 2. Plaintiffs also argue that their "State Auto coverage" covers the farm, Robert Pace, Corey Pace, and all farm employees, and also covers the Polaris Ranger. *Id.* Though Plaintiffs cite only to the Business

11

Auto Policy when defining their "comprehensive commercial insurance coverage," it is clear that they are actually referring to the Preferred Farm and Ranch Policy, as they then go on to cite portions of that policy. Specifically, they cite to those provisions listing Corey Pace as an Additional Insured and the Polaris Ranger. *Id.* at 3. However, Plaintiffs then go on to cite the UIM coverage provisions listed in the Business Auto Policy, again referring broadly to their "State Auto coverage" without distinguishing between the two policies. *Id.* Referring to the Business Auto Policy, Plaintiffs argue that "the automobile segment of the State Auto coverage is just that—a segment of an integrated comprehensive insurance scheme." *Id.* at 7. The crux of Plaintiffs' argument therefore seems to be that the Business Auto Policy is merely one section of the Preferred Farm and Ranch Policy.

      The Court finds no merit in this argument. First, Plaintiffs have not provided any evidence that the two policies are somehow joined as one, or that the Business Auto Policy is subsumed within the Preferred Farm and Ranch Policy. They cite to no provision in either policy that references the other policy, and both policies have different policy numbers. Other than mere speculation, Plaintiffs offer no basis for concluding that the two policies are in any way related. Such speculation is insufficient to survive a motion for summary judgment. *See Bradley v. Wal-Mart Stores East, LP*, 587 F. App'x 863, 866 (6th Cir. 2014) ("A properly supported motion for summary judgment will not be defeated by conclusory allegations, speculation and unsubstantiated assertions." (citation omitted)). Further, the language of the two policies contradicts Plaintiffs' argument. For example, if those autos covered in the Preferred Farm and Ranch Policy were also covered in the Business Auto Policy, they would be listed in Item Three of the Business Auto Policy, or the policy would include an addendum listing that newly-

acquired property. Item Three does not reference the Polaris Ranger, and there is no such addendum.

Having determined that the Business Auto Policy applies in this case, the Court next considers whether Plaintiffs are entitled to UIM benefits under that policy. To answer that question, the Court must first determine if the Business Auto Policy's UIM exclusions are clear and unambiguous. If so, the Court must then determine if those provisions apply under the facts of this case to bar UIM benefits. However, if the Court determines that the UIM exclusions are ambiguous, the Court must consider if the plaintiffs reasonably expected to receive UIM coverage under the Business Auto Policy.

Turning to the first question in this analysis, the Court finds that the language of the Business Auto Policy's UIM exclusion provisions are clear and unambiguous. The language contained in the Business Auto Policy is not unlike that contained in the Encompass Policy in *Tryon*. Like the Encompass Policy, State Auto's Business Auto Policy also includes a separate section devoted to its UIM coverage, which begins with a bold, clearly worded heading identifying that section of the policy. [DN 18-4, p. 52]. It clearly provides that, where the Named Insured is an individual, UIM coverage is available only for the Named Insured (Robert F. Pace), or his family members, or other persons occupying a covered auto.[3] *Id.* The policy clearly defines "family member" as a person related to the Named Insured by blood, marriage, or adoption, but it also clearly states that the person must also be a resident of the Named Insured's household. *Id.* at 54. The policy further defines "covered auto" in the context of UIM coverage as "only those 'autos' described in Item Three of the Declarations for which a premium charge is shown." *Id.* at 32, 38. As the Supreme Court of Kentucky explained in *Tryon*, such clear and

---

[3] The policy also allows UIM benefits for any person that sustained bodily injury by another insured; however, the undisputed facts do not warrant application of that provision, and neither party argues that it would apply.

13

unambiguous UIM exclusions are not prohibited by the MVRA or public policy. 502 S.W.3d at 593.

Having determined that the policy's UIM exclusion provisions are unambiguous, the Court next considers if they apply in this case to bar UIM benefits to Plaintiffs for the personal injuries sustained during the July 19, 2019 accident. First, the Court notes that Plaintiffs argue that (1) Corey Pace is a named insured and (2) the Polaris Ranger is a covered auto, relying on the Preferred Farm and Ranch Policy to support both arguments. However, Corey Pace is not a named insured on the *Business Auto Policy*, and the Polaris Ranger is not a covered auto under that policy. Thus, the only avenue for Plaintiffs to seek relief under the Business Auto Policy's UIM provisions is to demonstrate that Corey Pace is a "family member" of the Named Insured, his father, Robert Pace. While Corey Pace claims relation to Robert Pace by blood, thereby satisfying one element of the "family member" definition, he does not argue nor provide any evidence to conclude that he is a resident of his father's household.[4] Accordingly, Plaintiffs are not entitled to UIM benefits under the Business Auto Policy for injuries sustained in the July 19, 2019 accident.

In sum, the Court finds that the policy clearly states that State Auto has no intention of providing UIM coverage to individuals who are not related to Robert Pace and residing in his household, or who are not otherwise occupying an automobile specifically listed in the policy. "This information is offered in plain language and presented boldly within the four corners of the agreement—this cannot be said to be hidden in the small print." *Tryon*, 502 S.W.3d at 593. Simply stated, then, State Auto's Business Auto Policy "is a clear and unambiguous

---

[4] Plaintiffs do not argue that discovery is needed to produce evidence that Corey and H.P. lived in Robert Pace's home at the time of the accident. Presumably, there would be no need for such discovery, as Plaintiffs would possess the relevant information to prove their residence. Accordingly, the Court must conclude that Plaintiffs were *not* residents of Robert Pace's household at the time of the accident.

manifestation of its intent to deny coverage in certain scenarios." *Id.* Further, because the terms are so clear, it would not have been reasonable for Plaintiffs to expect UIM coverage under the Business Auto Policy. Because the terms are clear, and because such UIM exclusions are not unenforceable as a matter of law, the Court will grant summary judgment in favor of State Auto.

In doing so, the Court notes that discovery was not necessary to resolve this dispute. Plaintiffs briefly argued that summary judgment would be premature in their response to State Auto's motion, [DN 21, p. 4]. Specifically, Plaintiffs noted that no discovery has been taken, though they did not identify what material facts needed to be developed in discovery. *Id.* Plaintiffs then filed their own motion seeking summary judgment, and the Court therefore understands that they have abandoned their argument that summary judgment is premature. Regardless, the only question before the Court was whether the Plaintiffs were entitled to the UIM benefits under the State Auto policies. Looking to the plain language of the policies, the Court determined that the Business Auto Policy applied; the language of the Business Auto Policy was clear and unambiguous; and the relevant facts surrounding the July 19, 2019 accident, which were not in dispute, warranted application of the UIM exclusion provisions. Accordingly, there was no dispute of material fact and, as a result, no need for further factual development through discovery. It is therefore appropriate to grant summary judgment at this stage of the proceedings.

### IV. CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that State Auto's Motion for Summary Judgment, [**DN 18**], is **GRANTED** and Plaintiffs' Motion for Summary Judgment, [**DN 20**], is **DENIED**. A separate judgment shall follow.

*[signature: Thomas B. Russell]*

15

**Thomas B. Russell, Senior Judge**
**United States District Court**

cc: Counsel

March 18, 2022